IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**SAMUEL HAYWOOD MYLES,**

      **Plaintiff,**

v.                                                                    **Civil action no. 2:07cv43**
                                                                        **(Judge Maxwell)**

**CHAPLAIN WALLACE,**
**CHAPLAIN KOWALEZYK,**
**CHAPLAIN ELLIOTT,**

      **Defendants.**

**REPORT AND RECOMMENDATION**

On June 1, 2007, the plaintiff, initiated this case by filing a civil rights complaint for the Violation of Civil Rights Under 42 U.S.C. § 1983. Because the plaintiff is a federal inmate pursuing claims against federal officials, the undersigned has treated this matter as one pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), a case in which the Supreme Court created a counterpart to 42 U.S.C. §1983 and authorized suits against federal employees in their individual capacities. This matter is before the undersigned for an initial review and report and recommendation pursuant to LR PL P 83.01, <u>et</u> <u>seq</u>., and 28 U.S.C. §§ 1915(e) and 1915(A).

**I.  The Complaint**

In his complaint, the plaintiff alleges that during his incarceration at the United States Penitentiary at Hazelton, he placed two orders for several Religious or Biblical Books from a Christian book distributor. It would appear that the order was placed in May of 2005 and paid for through his prisoner trust account. It would also appear that the total cost of the purchase was $ 73.97. When he did not receive the books, the plaintiff contacted the book distributors. He was informed, by response dated August 12, 2005, that

the order was shipped on or about June 13, 2005 and addressed to Reverend Samuel.[1] The plaintiff then indicates that after "several months" and further correspondence with the book distributor, he addressed the issue of the missing order with all three chaplains. He maintains that all three chaplains informed him several times that the Chapel Department had not received the shipment. The plaintiff further alleges that "only after and full investigation by Inmate Samuel Myles personally be way of and institution Bureau Form BP-148/or Cop-Out would the Chapel Department come forward and within and response back only to address the issue's in regarding to both order's of Religious/or Biblical Book's in within their response from the Chapel Department stating that they have and has in their possession for the last several month's all of Inmate Samuel Haywood Myles personal property."[2]

In reviewing the plaintiff's requests for administrative remedies, together with the responses thereto, it is clear that the plaintiff's books were in fact mixed up with other books from the same vendor which had been purchased for the religious services library. The plaintiff's books were then placed in the library for general inmate use. Although the staff at USP Hazelton offered to reorder the books and provide them to the plaintiff upon receipt, he refused that offer and demanded not just the replacement cost of the books but also a monthly fee for the [library's] use of the books.

In his complaint, the plaintiff alleges that the conduct of the defendants' negligence violated his religious rights under the First Amendment, deprived him of his property without due process, and violated the Religious Freedom Restoration Act ("RFRA"). As relief, the plaintiff is seeking damages in the amount of $73.97 for the full cost of the orders he placed and an additional $73.97 for each and ever month that his personal property was placed in the chapel department leisure library for the full usage of the inmates

---

[1] The undersigned is unsure whether Reverend Samuel is the plaintiff, Samuel Myles, or one of the chaplains at USP Hazelton.

[2] This quotation from the plaintiff's complaint contains numerous grammatical and spelling errors. However, the undersigned has chosen to recite the quote verbatim without noting each error with a [sic].

within Hazelton.[3]

## II.  Standard of Review

Because plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious.  Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous if it is without arguable merit either in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325 (1989).  However, the Court must read *pro se* allegations in a liberal fashion.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  A complaint which fails to state a claim under Fed. R. Civ. P. 12(b)(6) is not automatically frivolous.  See Neitzke at 328.  Frivolity dismissals should only be ordered when the legal theories are "indisputably meritless,"[4] or when the claims rely on factual allegations which are "clearly baseless."  Denton 0v. Hernandez, 504 U.S. 25, 32 (1992).  This includes claims in which the plaintiff has little or no chance of success.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

## III.  ANALYSIS

### A.  RFRA

A plaintiff makes out a *prima facie* claim under RFRA "by proving the following elements: (1) a substantial burden imposed by the federal government on a (2) sincere (3) exercise of religion."  Kikumura v. Hurley, 242 F.3d 950, 960 (19th Cir. 2001).  If a plaintiff successfully makes out a *prima facie* case, the

---

[3]Although it is not clear, it would appear that the books remain in the Chapel Department Leisure Library, and therefore, the plaintiff is seeking the monthly fee to date.

[4] Id. at 327.

3

defendant then must show that the burden placed on the religious exercise is permissible.  See Gartrell v. Ashcroft, 191 F.Supp. 2d 23, 37 (D.D.C. 2002).

Even the most liberal reading of the plaintiff's complaint fails to establish a claim under RFRA.  While the undersigned has no doubt that the plaintiff is sincere in his religious devotion, the fact that two orders of religious materials placed and paid for by the plaintiff were put in the chapel department leisure library does not constitute a substantial burden imposed by the BOP on the plaintiff's exercise of religion.  Clearly, if the BOP prohibited the plaintiff from purchasing religious materials, that would raise a *prima facie* claim.  However, the plaintiff's complaint clearly establishes that he was permitted to order the material.  The mere fact that one occasion it ended up in the chapel department library instead of being delivered to the plaintiff, does not establish a substantial burden.

## B. BIVENS

### 1. Due Process

"The Due Process clause was intended to secure an individual from abuse of power by government officials."  Daniels v. Williams, 474 U.S. 327, 328 (1986).   "By requiring the government to follow appropriate procedures when its agents decide 'to deprive any person of life, liberty, or property,' the Due Process Clause promotes fairness in such decisions."  Id. at 331.  However, lack of due care or negligence resulting in a loss does not state a due process violation.  "Far from an abuse of power, lack of due care suggest no more than a failure to measure up to the conduct of a reasonable person.  To hold that injury caused by such conduct is a deprivations....would trivialize the centuries-old principle of due process of law."  Id.

In the instant case, the plaintiff alleges, at best, that the Chaplains were negligent in not determining that his personal property had been placed in the leisure library instead of being delivered for his exclusive use.  According, the plaintiff's complaint does not state a due process violation.

### 2. Free Exercise Claim

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for redress of grievances." With regard to prisoners, the Supreme Court has specifically found that a prison inmate retains only those First Amendment rights "that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell V. Procunier, 417 U.S. 817, 822 (1974).   Therefore, a prison policy (alleged to infringe constitutional rights [is] judged under a reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." O'Lone v. Estate Shabazz, 482 U.S. 342, 349 (1987). Furthermore, the court is required to give deference to the judgment of prison administrators in First Amendment challenges. Id. at 350.

In Turner v. Safley, 482 U.S. 78, 85 (1987), the United States Supreme Court formulated a reasonableness test sensitive to both the need to protect the constitutional rights of inmates and the policy of judicial restraint regarding prisoner complaints. Specifically, the court determined that when a prison regulation or policy "impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Id. at 89. Therefore, although a prison regulation may infringe on an inmate's constitutional rights, that infringement is only actionable to the extent that the rate regulation is unreasonable

Here, the Court need not address the Turner test because the plaintiff does not alleges that a prison regulation prevented him from the free exercise of his religion.  As previously noted, the plaintiff has not alleged that the BOP prevented him from ordering or possessing printed religious materials.  Rather, he merely alleges that the chaplains acting negligently in not insuring that he received the materials that he had ordered and for which he had paid.  Such conduct does not rise to the level of a constitutional violation.

**IV. RECOMMENDATION**

In consideration of the foregoing, it is the undersigned's recommendation that the plaintiff's complaint (Doc. 1) be **DISMISSED WITH PREJUDICE** under 28 U.S.C. §§ 1915(e) and 1915A for failure to state a claim.

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985) Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet.

Dated: November 7, 2008

                                                              /s/ James E. Seibert
                                                                JAMES E. SEIBERT
                                           UNITED STATES MAGISTRATE JUDGE